# EXHIBIT A

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL DISTRICT**
**DUPAGE COUNTY, ILLINOIS**

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 14952550
2021L001019
FILEDATE: 9/24/2021 11:31 AM
Date Submitted: 9/24/2021 11:31 AM
Date Accepted: 9/24/2021 1:24 PM
JC

**JENNIFER BENTSON** and
**RODNEY BENTSON,**

        Plaintiffs,

v.

**WEST SUBURBAN BANCORP, INC.,**
d/b/a WEST SUBURBAN BANK,

        Defendant.

2021L001019

Case No. _____

**JURY DEMANDED**

## PLAINTIFFS' VERIFIED COMPLAINT

Plaintiffs, JENNIFER BENTSON and RODNEY BENTSON, by and through their attorney, Griffin Williams McMahon & Walsh LLP, present their Verified Complaint against WEST SUBURBAN BANCORP, INC., d/b/a WEST SUBURBAN BANK, and in support thereof state as follows:

## NATURE OF THE ACTION

1.    This action is brought against Defendant West Suburban Bancorp, Inc., d/b/a West Suburban Bank ("WSB") for discriminating against and discharging Plaintiffs Jennifer and Rodney Bentson (collectively "Plaintiffs") based on Plaintiff Jennifer Bentson's disability and for failing and refusing to accommodate Plaintiff Jennifer Bentson's disability in willful violation of the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq*; and the American with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et seq.*

2.    This action is also brought against WSB for its outrageous, deliberate and tortious conduct that was intended to harm Plaintiffs and, in fact, did harm Plaintiffs, constituting Intentional Infliction of Emotional Distress in violation of Illinois common law.

3.     Specifically, over a period of four months, WSB's managers embarked on a pattern of egregious conduct intended to deprive Plaintiffs of employment, compensation and health insurance benefits, arduously attempted to and in fact did damage Plaintiffs' careers, subjected Plaintiffs to actions which were extreme, outrageous and intended to inflict severe emotional distress, and in fact did cause Plaintiffs to suffer extreme emotional, mental, physical and financial distress.

4.     Plaintiffs seek actual, compensatory, punitive and statutory damages arising out of and related to the alleged unlawful conduct, including an award of reasonable attorneys' fees, costs and expenses.

## PARTIES, JURISDICTION AND VENUE

5.     Plaintiff Jennifer Bentson ("Jennifer") was an employee of WSB for over 15 years from January 2006 through January 2021.

6.     Plaintiff Rodney Bentson ("Rodney") was an employee of WSB for over 18 years from March 2002 to February 2021.

7.     Rodney and Jennifer Bentson were married in October 1994 and they are residents of Aurora, DuPage County, Illinois.

8.     Defendant West Suburban Bancorp, Inc. is an Illinois corporation, the parent bank holding company of and doing business as West Suburban Bank with a principal place of business in Lombard, DuPage County, Illinois. WSB is one of the largest privately-held independent banks headquartered in DuPage County, providing retail and commercial banking products and services throughout DuPage, Kane, Kendall, and Will Counties. As of December 31, 2020, WSB had total assets of approximately $2.8 billion, net income in excess of $10.6 million, and WSB employs more than 400 full-time employees in over 40 retail bank branches.

2

9.      Jurisdiction and venue are proper pursuant to 735 ILCS 5/2-101. Some or all of the unlawful employment practices and claims alleged herein were committed in DuPage County, Illinois.

10.     Plaintiffs have fulfilled all conditions precedent to the filing of this Verified Complaint. Plaintiffs timely filed Charges of Discrimination on July 9, 2021, with the Illinois Department of Human Rights ("IDHR") and the United States Equal Employment Opportunity Commission ("EEOC"). Plaintiffs exhausted all of their administrative remedies through the IDHR and the EEOC, and the respective agencies issued the Opt Out and Right to Sue notices on August 19, 2021, which are attached hereto and made a part hereof as Exhibit A.

11.      Plaintiffs filed the instant Verified Complaint within the time permitted in accordance with the Opt Out and Right to Sue notices and pursuant to 775 ILCS 5/7A-102(C-1).

## STATEMENT OF FACTS

12.     Jennifer began her employment with WSB on January 23, 2006, as a Manager Trainee.

13.     During the course of her employment, Jennifer was promoted four times in 15 years, and three out of these four promotions were decisions made by WSB's management unilaterally without Jennifer applying internally for open positions.

14.     Jennifer was promoted by WSB to Assistant Manager on March 6, 2007.

15.     Jennifer was promoted by WSB to Branch Manager I on November 9, 2007.

16.     Jennifer was promoted by WSB to Branch Manager II on October 10, 2011.

17.     Jennifer was promoted by WSB to Branch Manager III on April 3, 2017.

18.     Throughout her employment with WSB, Jennifer's performance was praised by her managers and she received all positive performance reviews along with salary increases with each promotion as well as annually based on her good performance.

19.     On June 30, 2018, Jennifer experienced sudden and severe loss of the use of her left arm and left leg and was diagnosed with Multiple Sclerosis ("MS").

20.     Due to her ongoing challenges with this debilitating medical condition, Jennifer relies primarily on a wheelchair for mobility, and she is substantially limited in one or more major life activities.

21.     Despite Jennifer's diagnosis, she continued to work full time and perform all of the essential functions of her job, maintaining her good performance and outstanding attendance record, and meeting or exceeding WSB's legitimate business expectations for the last two years of her employment.

22.     The medical expenses for treating and managing Jennifer's MS exceeded $1,000,000 since her symptoms and diagnosis in 2018 and, as a direct result, WSB's total health insurance premium expenses significantly increased in 2019 and 2020.

23.     Rodney began his employment with WSB on March 11, 2002, as a Collections Specialist. At all relevant times, Rodney worked at WSB's Lake Street Aurora branch in Aurora, Illinois.

24.     Throughout his 18 years of employment with WSB, Rodney's performance was rated favorably by his manager and he received all positive performance reviews.

25.     Based on his good performance, Rodney received annual salary increases until he reached the top of his salary grade and after that he received annual bonuses equal to three percent (3%) or more of his annual salary each year in lieu of an annual salary increase.

26.     On October 9, 2020, Rodney was informed by his manager, Kevin Bussey ("Bussey"), Vice President, Collections Manager, that his position was being reduced from full-time to 20 hours per week, effective October 26, 2020, purportedly to reduce WSB's expenses.

27.     In addition to a decrease in Rodney's annual salary of more than $27,000, this reduction to 20 hours per week resulted in Rodney losing eligibility for health, life and accidental death insurance and other employee benefits.

28.     On October 12, 2020, Rodney sent an email to Bussey with a complete list of all of Rodney's job responsibilities and Rodney proposed that he remain full-time at 30 hours per week with a 20% reduction in his hourly pay and a demotion given the reassignment of some of his responsibilities, which still would have resulted in a savings of over $21,000 annually for WSB.

29.     Rodney acknowledged in his email to Bussey that a major factor for his proposal was to maintain his eligibility for health insurance coverage with WSB. Even though at that time Rodney thought he would be eligible for family health insurance coverage through Jennifer, Rodney explained to Bussey that if Jennifer had a setback with respect to her MS and if she could no longer perform her job responsibilities in the future, both Rodney and Jennifer would be left without health insurance and unable to provide Jennifer with the specialized medical care she needed to function.

30.     That same day, on October 12, 2020, Bussey forwarded Rodney's email to Matthew Acker including all of Rodney's explanations and concerns about his and Jennifer's health insurance needs.

31.     Matthew Acker is WSB's Senior Vice President, Director of Retail Branch Banking. At all relevant times, Matthew Acker was a Senior Officer and member of WSB's executive management and he has the authority to make management decisions that impacted

WSB's business, retail bank branches and employees, including hiring, firing and other employment-related decisions. Matthew Acker is the son of WSB Chairman of the Board and CEO Keith Acker.

32.     Bussey confirmed the significant scope and volume of Rodney's responsibilities and requested Rodney's 30 hours per week proposal be considered by Matthew Acker and WSB. Bussey noted that Rodney's proposal was roughly a $6,300 annual difference from the original 20 hours per week position and Bussey offered to reduce his own compensation in order for WSB to accept Rodney's proposal.

33.     Bussey also explained to Matthew Acker that Rodney had been a loyal employee for over 18 years and WSB would benefit by having Rodney work 30 hours per week as opposed to 20 hours per week, especially for coverage of the Collections department when Bussey is out of the office for vacation or personal time, which is at least five weeks each year.

34.     On October 13, 2020, Matthew Acker acknowledged Bussey's email and said he would talk to Debbie Ross ("Ross"), then-Vice President, Director of Human Resources, about "some of the items" in Bussey's and Rodney's emails.

35.     On October 15, 2020, less than a week after Rodney was informed that his position was being reduced to part-time employment, Jennifer was informed that the branch she managed, WSB's Oswego West branch in Oswego, Illinois, would be closing.

36.     On October 16, 2020, Matthew Acker sent an email to all employees announcing that the Oswego West branch would be closing effective January 26, 2021, stating that the lease for that location was expiring at the end of January 2021, and claiming that WSB had little success coming to an agreement on a new lease with the new management company.

37.     Four days later, on October 20, 2020, Jennifer received a letter from Ross advising that WSB decided to eliminate her position effective January 30, 2021, stating that "the bank has not reached profitability goals in the last quarter" and further stating that this decision was based on the closure of her branch and "current and forecasted business needs necessitating a reduction in force."

38.     Ross informed Jennifer that she was welcome to apply internally for "any open job positions" for which she is qualified, but Ross noted that "if a replacement position with the bank is not identified," Jennifer's employment with WSB would end on January 30, 2021.

39.     Three employees who reported to Jennifer at WSB's Oswego West branch – Ernestine Newman (no known disabilities), Cinthia Leon (no known disabilities), and Sabrina Prevec (no known disabilities) – were also informed that their positions would be eliminated at the end of January 2021 due to the closure of the branch.

40.     All three of these employees applied internally for two open positions. WSB hired two of those employees for the open positions for which they applied and the third employee was offered an unposted position by WSB's management that had not been openly disclosed without that employee submitting an internal application.

41.     Six days after Jennifer received notice of her termination of employment and notwithstanding Rodney's detailed proposal and Bussey's support of that proposal, Rodney's position at WSB was reduced to 20 hours per week on October 26, 2020, resulting in Rodney losing over $27,000 of his annual compensation and losing his eligibility for health, life and accidental death insurance and other employee benefits.

42.     Nearly a month after acknowledging Rodney's 30 hours per week proposal and Bussey's confirmation of the significant scope and volume of Rodney's responsibilities and offer

to reduce his own compensation by $6,300 in support of that proposal, Matthew Acker informed Bussey on November 11, 2020, that "[l]ooking at the volume of work that the collections department has there is no need for changing Rods [sic] status back to full time."

43.     That same day, on November 11, 2020, Matthew Acker sent an email to all employees stating that the only location closing is the Oswego West branch, that the only reason WSB is closing that branch is "because of lease issues with the landlord" and "[w]e have not and are not looking to close any other locations right now."

44.     From October 20, 2020, through January 30, 2021, there were no open positions posted internally or externally for which Jennifer felt she was qualified and no one at WSB informed Jennifer about any current or future open positions that could even possibly be an option for her.

45.     In December 2020, Jennifer applied for a teller position at WSB's Darien branch in Darien, Illinois, but she withdrew her application for this position in January 2021, because she was substantially overqualified for the position and she determined that the expense of transportation required for Jennifer to travel to the branch location would cost nearly as much as the compensation for the position.

46.     On January 30, 2021, Jennifer's employment at WSB was terminated. As a result of Jennifer's termination of employment, Jennifer and Rodney lost their eligibility to participate in WSB's health insurance coverage.

47.     Only four days after Jennifer's employment was terminated, WSB announced on February 3, 2021, that the Branch Manager of the Lake Street Aurora branch in Aurora, Illinois, was promoted within WSB to another position effective February 15, 2021. Notably, the Lake Street Aurora branch was the location at which Rodney worked.

48.     The promotion of the Branch Manager of the Lake Street Aurora branch was planned and well known by Matthew Acker and other members of WSB's management in advance of Jennifer's termination date.

49.     Despite the fact that Jennifer had previously been promoted by WSB's management throughout her career on three separate occasions without her applying internally for an open position and even though WSB's management transferred another non-disabled employee from the Oswego West branch to an unposted position that was not openly disclosed and without any internal application, WSB failed to inform Jennifer about the availability of this position during the three months prior to the termination of her employment and WSB failed to offer Jennifer the opportunity to be considered for the position.

50.     Matthew Acker and other members of WSB's management undoubtedly knew about the Lake Street Aurora Branch Manager's promotion and the imminent opening of this Branch Manager position before Jennifer's termination of employment and intentionally withheld this information from Jennifer, even though Jennifer was qualified and should have been considered for this position.

51.     Additionally, WSB knew that Rodney drove Jennifer to work at the Oswego West branch each day before he went to work at the Lake Street Aurora branch. If Jennifer had been considered for and transferred to the Lake Street Aurora branch, it would have been an ideal solution allowing Rodney and Jennifer to continue their employment with WSB since Rodney could have driven Jennifer and himself to work at the Lake Street Aurora branch.

52.     WSB's actions in reducing Rodney's position to part-time, failing to hire, transfer and/or accommodate Jennifer for an open position at WSB's Lake Street branch for which she was

exceptionally qualified, and terminating Jennifer's employment were intentional outrageous and could not possibly be an unfortunate coincidence.

53.     WSB's actions were taken due to Jennifer's disability and the expense of providing health insurance to Rodney and Jennifer due to Jennifer's disability.

54.     As a direct result of WSB's conduct, Rodney was forced to seek other employment and terminate his 18-year career with WSB on February 16, 2021, to take another position with a lower hourly rate in order to obtain health insurance coverage for Jennifer and himself at a much higher premium and out-of-pocket cost for this coverage.

55.     WSB's conduct through Matthew Acker and other WSB employees is in direct violation of WSB's policies, including but not limited to WSB's policies on Equal Employment Opportunity, Non-Harassment and Non-Discrimination, Americans with Disabilities Act, and Code of Business Conduct and Ethics.

56.     WSB's conduct in its relentless quest for higher profitability by violating the legal rights and trampling on the livelihood and health of Jennifer, a long-term, good performing, disabled employee, and the livelihood of her husband, Rodney, who was also a long-term, good performing employee, is offensive and despicable.

57.     It is even more shocking that WSB's unlawful conduct occurred within a community-oriented financial institution that promoted itself to the public during the COVID-19 pandemic and all relevant times described herein with the taglines: "HELPING YOU AND OUR COMMUNITY;" "ALL IN THIS TOGETHER;" and "HERE FOR YOU NOW AND ALWAYS."

58.     The egregiousness of WSB's unlawful conduct through Matthew Acker and other WSB employees and the devastating financial and emotional harm to Jennifer and Rodney Bentson must be evaluated in the context of the merger announced in July 2021 between WSB and Old

Second Bancorp, Inc. with an aggregate transaction value of approximately $297 million, which if approved by government regulators and both companies' shareholders in the next few months, is projected to result in a pro forma company with approximately $6.2 billion in assets, $5.3 billion in deposits and $3.4 billion in loans creating the largest community bank under $10 billion in assets with over 70 branches across in the Chicago market.

## COUNT I
### Disability Discrimination in Violation of the
### Illinois Human Rights Act on Behalf of Jennifer Bentson

59.     Plaintiff Jennifer Bentson realleges and incorporates by reference paragraphs 1 through 58 as if fully set forth herein.

60.     The Illinois Human Rights Act ("IHRA") provides: "'Unlawful discrimination' means discrimination against a person because of his or her actual or perceived: race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, ***disability***, military status, sexual orientation, pregnancy, or unfavorable discharge from military service as those terms are defined in this Section." 775 ILCS 5/1-103(Q)(Emphasis added).

61.     The IHRA further provides: "'Disability' means a determinable physical or mental characteristic of a person, including, but not limited to, a determinable physical characteristic which necessitates the person's use of a guide, hearing or support dog, the history of such characteristic, or the perception of such characteristic by the person complained against, which may result from disease, injury, congenital condition of birth or functional disorder. . . ." 775 ILCS 5/1-103(I).

62.     At all relevant times, Jennifer was an "employee" under the IHRA.

63.     At all relevant times, WSB was an "employer" under the IHRA.

11

64. At all relevant times, Jennifer was a qualified individual with a disability as defined by the IHRA due to her Multiple Sclerosis ("MS") and the physical limitations she experienced as a result of MS.

65. Jennifer's disability requires her to primarily rely on a wheelchair for mobility and she is substantially limited in one or more major life activities.

66. At all relevant times, Jennifer was capable of performing all the essential functions of her position with or without a reasonable accommodation.

67. At all relevant times, Jennifer performed her job to the employer's legitimate expectations as demonstrated by her positive performance reviews, salary increases and the four promotions she received during her employment at WSB.

68. WSB was aware of Jennifer's disability and/or perceived her as a disabled because Jennifer primarily relied on a wheelchair for mobility and Jennifer and Rodney notified WSB about Jennifer's diagnosis with MS.

69. WSB was aware of the medical expenses incurred for treating and managing Jennifer's MS since her symptoms and diagnosis in 2018 and the corresponding significant increase in WSB's total health insurance premium expenses in 2019 and 2020.

70. Based on Jennifer's disability and the expense of providing health insurance to Jennifer due to her disability, WSB discriminated against Jennifer in violation of her rights under the IHRA.

71. Based on Jennifer's disability and the expense of providing health insurance to Jennifer due to her disability, WSB failed to hire, transfer and/or accommodate Jennifer in violation of her rights under the IHRA.

72.     Based on Jennifer's disability and the expense of providing health insurance to Jennifer due to her disability, WSB discharged Jennifer from her employment in violation of her rights under the IHRA.

73.     WSB refused to hire, transfer or even consider Jennifer for the Lake Street Branch Manager Position, for which Jennifer was exceptionally qualified and should have been considered.

74.     WSB did not treat similarly situated non-disabled/regarded as disabled individuals the same as Jennifer. In fact, similarly situated employees who were not disabled were hired or transferred to employment opportunities at other branches of WSB and their employment was not terminated. One similarly situated employee was offered an unposted position by WSB's management that had not been openly disclosed without that employee submitting an internal application.

75.     WSB engaged in the above-stated discriminatory conduct willfully, intentionally, and with the knowledge and intent to violate state law prohibiting such acts of discrimination.

76.     There was no legitimate non-discriminatory basis for WSB's discriminatory treatment and discharge of Jennifer.

77.     WSB discriminated against, failed to hire, transfer and/or accommodate and discharged Jennifer based on her disability and/or perceived disability and the expense of providing health insurance to Jennifer due to her disability.

78.     As a direct and proximate result of WSB's unlawful conduct, Jennifer suffered and continues to suffer substantial losses in wages and benefits, other past and future pecuniary losses, great emotional distress, mental anguish, embarrassment, humiliation and damage to reputation in excess of $50,000.

WHEREFORE, Plaintiff, JENNIFER BENTSON, respectfully requests this Court enter judgment in her favor and against Defendant, WEST SUBURBAN BANCORP, INC., d/b/a WEST SUBURBAN BANK, in an amount that will fully compensate her for her injuries and damages from Defendant's willful and intentional violation of Plaintiff's rights under the Illinois Human Rights Act and award Plaintiff damages for loss of wages, past and future, loss of future earnings, loss of career opportunities, loss of employee benefits, loss of retirement benefits, exemplary/punitive damages, compensatory damages for severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, exacerbation of her medical condition, medical costs, the expense of litigation, expert witness fees, reasonable attorneys' fees, cost, liquidated damages and prejudgment interest, as well as any other further relief as this Court deems just and equitable.

## COUNT II
### Disability Discrimination in Violation of the
### Americans with Disabilities Act on Behalf of Jennifer Bentson

79.     Plaintiff Jennifer Bentson realleges and incorporates by reference paragraphs 1 through 58 as if fully set forth herein.

80.     The American with Disabilities Act defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C.S. § 12102(1)(a).

81.     At all relevant times, Jennifer was an "employee" under the ADA.

82.     At all relevant times, WSB was an "employer" under the ADA.

83.     At all relevant times, Jennifer was a qualified individual with a disability as defined by the ADA due to her Multiple Sclerosis ("MS") and the physical limitations she experienced as a result of MS.

14

84.     Jennifer's disability requires her to primarily rely on a wheelchair for mobility and she is substantially limited in one or more major life activities.

85.     At all relevant times, Jennifer was capable of performing all the essential functions of her position with or without a reasonable accommodation.

86.     At all relevant times, Jennifer performed her job to the employer's legitimate expectations as demonstrated by her positive performance reviews, salary increases and the four promotions she received during her employment at WSB.

87.     WSB was aware of Jennifer's disability and/or perceived her as a disabled because Jennifer primarily relied on a wheelchair for mobility and Jennifer and Rodney notified WSB about Jennifer's diagnosis with MS.

88.     WSB was aware of the medical expenses incurred for treating and managing Jennifer's MS since her symptoms and diagnosis in 2018 and the corresponding significant increase in WSB's total health insurance premium expenses in 2019 and 2020.

89.     Based on Jennifer's disability and the expense of providing health insurance to Jennifer due to her disability, WSB discriminated against Jennifer in violation of her rights under the ADA.

90.     Based on Jennifer's disability and the expense of providing health insurance to Jennifer due to her disability, WSB failed to hire, transfer and/or accommodate Jennifer in violation of her rights under the ADA.

91.     Based on Jennifer's disability and the expense of providing health insurance to Jennifer due to her disability, WSB discharged Jennifer from her employment in violation of her rights under the ADA.

92.     WSB refused to hire, transfer or even consider Jennifer for the Lake Street Branch Manager Position, for which Jennifer was exceptionally qualified and should have been considered.

93.     WSB did not treat similarly situated non-disabled/regarded as disabled individuals the same as Jennifer. In fact, similarly situated employees who were not disabled were hired or transferred to employment opportunities at other branches of WSB and their employment was not terminated. One similarly situated employee was offered an unposted position by WSB's management that had not been openly disclosed without that employee submitting an internal application.

94.     WSB engaged in the above-stated discriminatory conduct willfully, intentionally, and with the knowledge and intent to violate federal law prohibiting such acts of discrimination.

95.     There was no legitimate non-discriminatory basis for WSB's discriminatory treatment and discharge of Jennifer.

96.     WSB discriminated against, failed to hire, transfer and/or accommodate and discharged Jennifer based on her disability and/or perceived disability and the expense of providing health insurance to Jennifer due to her disability.

97.     As a direct and proximate result of WSB's unlawful conduct, Jennifer suffered and continues to suffer substantial losses in wages and benefits, other past and future pecuniary losses, great emotional distress, mental anguish, embarrassment, humiliation and damage to reputation in excess of $50,000.

WHEREFORE, Plaintiff, JENNIFER BENTSON, respectfully requests this Court enter judgment in her favor and against Defendant, WEST SUBURBAN BANCORP, INC., d/b/a WEST SUBURBAN BANK, in an amount that will fully compensate her for her injuries and damages

from Defendant's willful and intentional violation of Plaintiff's rights under the Americans with Disabilities Act and award Plaintiff damages for loss of wages, past and future, loss of future earnings, loss of career opportunities, loss of employee benefits, loss of retirement benefits, exemplary/punitive damages, compensatory damages for severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, exacerbation of her medical condition, medical costs, the expense of litigation, expert witness fees, reasonable attorneys' fees, cost, liquidated damages and prejudgment interest, as well as any other further relief as this Court deems just and equitable.

### COUNT III
### Intentional Infliction of Emotional Distress on Behalf of Jennifer Bentson

98.     Plaintiff Jennifer Bentson realleges and incorporates by reference paragraphs 1 through 58 as if fully set forth herein.

99.     Over a period of four months, WSB through Matthew Acker and other WSB employees embarked on a pattern of egregious conduct intended to deprive Jennifer of employment, compensation and health insurance benefits.

100.     WSB arduously attempted to and in fact did damage Jennifer's career, subjected Jennifer to actions which were extreme, outrageous and intended to inflict severe emotional distress, and in fact did cause Jennifer to suffer extreme emotional, mental, physical and financial distress.

101.     WSB's actions through Matthew Acker and other WSB employees to terminate Jennifer's employment after 15 years of employment because of her Multiple Sclerosis ("MS") and the expense of providing health insurance to Jennifer due to her MS, were extreme and outrageous.

102.    WSB's outrageous, deliberate and tortious conduct was intended to harm Jennifer and, in fact, did harm Jennifer, constituting intentional infliction of emotional distress in violation of Illinois common law.

103.    WSB knew or should have known that there was a high probability that its actions through Matthew Acker and other WSB employees would cause Jennifer severe emotional distress as she would face a substantial financial burden to obtain health insurance and the medical care Jennifer needed due to her MS.

104.    As a result of WSB's prolonged and outrageous actions, Jennifer Bentson has suffered and continues to suffer extreme emotional, mental, physical and financial distress.

105.    WSB's conduct through Matthew Acker and other WSB employees was so intense and offensive that no reasonable person could be expected to endure it.

106.    WSB is vicariously liable for Matthew Acker's conduct.

107.    Matthew Acker's and other WSB employee's misconduct with respect to Jennifer was committed within the scope of their employment and, in whole or in part, to further WSB's business interests.

108.    In violation of its written policies, WSB retained and continued to employ Matthew Acker and other WSB employees after it knew or should have known of their misconduct.

109.     As a direct and proximate result of WSB's unlawful conduct, Jennifer suffered and continues to suffer extreme emotional, mental, physical and financial distress in excess of $50,000.

WHEREFORE, Plaintiff, JENNIFER BENTSON, respectfully requests this Court enter judgment in her favor and against Defendant, WEST SUBURBAN BANCORP, INC., d/b/a WEST SUBURBAN BANK, in an amount that will fully compensate her for her injuries and damages from Defendant's willful and intentional infliction of emotional distress in violation of Illinois

common law and award Plaintiff damages for loss of wages, past and future, loss of future earnings, loss of career opportunities, loss of employee benefits, loss of retirement benefits, exemplary/punitive damages, compensatory damages for severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, exacerbation of her medical condition, medical costs, the expense of litigation, expert witness fees, reasonable attorneys' fees, cost, liquidated damages and prejudgment interest, as well as any other further relief as this Court deems just and equitable.

## COUNT IV
### Discrimination by Association in Violation of the
### American with Disabilities Act on Behalf of Rodney Bentson

110.    Plaintiff Rodney Bentson realleges and incorporates by reference paragraphs 1 through 58 as if fully set forth herein.

111.    The Americans with Disabilities Act prohibits employers from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association[.]" 42 U.S.C. § 12112(b)(4).

112.    At all relevant times, Jennifer was an "employee" under the ADA.

113.    At all relevant times, Rodney was an "employee" under the ADA.

114.    At all relevant times, WSB was an "employer" under the ADA.

115.    At all relevant times, Jennifer was a qualified individual with a disability as defined by the ADA due to her Multiple Sclerosis ("MS") and the physical limitations she experienced as a result of MS.

116.    WSB was aware of Jennifer's disability and/or perceived her as a disabled because Jennifer primarily relied on a wheelchair for mobility, she is substantially limited in one or more major life activities, and Jennifer and Rodney notified WSB about Jennifer's diagnosis with MS.

117.    WSB was aware that Rodney and Jennifer are married.

118.    WSB was aware of the medical expenses incurred for treating and managing Jennifer's MS since her symptoms and diagnosis in 2018 and the corresponding significant increase in WSB's total health insurance premium expenses in 2019 and 2020.

119.    At all times relevant, Rodney's performance was rated favorably by his manager and he received all positive reviews throughout his 18 years of employment at WBS.

120.    WSB reduced Rodney's position from full-time to 20 hours per week purportedly to reduce WSB's expenses.

121.    In addition to a decrease in Rodney Bentson's annual salary of more than $27,000, this reduction to 20 hours per week resulted in Rodney losing eligibility for health, life and accidental death insurance and other employee benefits with Respondent.

122.    Based on Jennifer's disability and the expense of providing health insurance to Rodney and Jennifer due to Jennifer's disability, WSB reduced Rodney's hours and discriminated against Rodney in violation of his rights under the ADA.

123.    As a direct result of WSB's conduct, Rodney was forced to seek other employment and terminate his 18-year career with WSB on February 16, 2021, to take another position with a lower hourly rate in order to obtain health insurance coverage for Jennifer and himself at a much higher premium and out-of-pocket cost for this coverage.

124.    WSB violated 42 U.S.C. § 12112(b)(4) in that WSB denied Rodney employment compensation and benefits due to his association with Jennifer.

125.    WSB engaged in the above-stated discriminatory conduct willfully, intentionally, and with the knowledge and intent to violate federal law prohibiting such acts of discrimination.

126.    There was no legitimate non-discriminatory basis for WSB's discriminatory treatment of Rodney.

127.    WSB discriminated against and constructively discharged Rodney based on his association with Jennifer and due to Jennifer's disability and/or perceived disability and the expense of providing health insurance to Rodney and Jennifer due to Jennifer's disability.

128.    As a direct and proximate result of WSB's unlawful conduct, Rodney suffered and continues to suffer substantial losses in wages and benefits, other past and future pecuniary losses, great emotional distress, mental anguish, embarrassment, humiliation and damage to reputation in excess of $50,000.

WHEREFORE, Plaintiff, RODNEY BENTSON, respectfully requests this Court enter judgment in his favor and against Defendant, WEST SUBURBAN BANCORP, INC., d/b/a WEST SUBURBAN BANK, in an amount that will fully compensate him for his injuries and damages from Defendant's willful and intentional violation of Plaintiff's rights under the Americans with Disabilities Act and award Plaintiff damages for loss of wages, past and future, loss of future earnings, loss of career opportunities, loss of employee benefits, loss of retirement benefits, exemplary/punitive damages, compensatory damages for severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, medical costs, the expense of litigation, expert witness fees, reasonable attorneys' fees, cost, liquidated damages and prejudgment interest, as well as any other further relief as this Court deems just and equitable.

**COUNT V**
**Intentional Infliction of Emotional Distress on Behalf of Rodney Bentson**

129.    Plaintiff Rodney Bentson realleges and incorporates by reference paragraphs 1 through 58 as if fully set forth herein.

130.    Over a period of four months, WSB through Matthew Acker and other WSB employees embarked on a pattern of egregious conduct intended to deprive Rodney of employment, compensation and health insurance benefits.

131.    WSB arduously attempted to and in fact did damage Rodney's career, subjected Rodney to actions which were extreme, outrageous and intended to inflict severe emotional distress, and in fact did cause Rodney to suffer extreme emotional, mental, physical and financial distress.

132.    WSB's actions through Matthew Acker and other WSB employees in reducing Rodney's position to part-time, failing to hire, transfer and/or accommodate his wife, Jennifer, for an open position at WSB's Lake Street branch for which she was exceptionally qualified, and terminating Jennifer's employment – all due to Jennifer's Multiple Sclerosis ("MS") and the expense of providing health insurance to Rodney and Jennifer due to Jennifer's MS – were intentional, extreme and outrageous.

133.    WSB's outrageous, deliberate and tortious conduct was intended to harm Rodney and, in fact, did harm Rodney, constituting intentional infliction of emotional distress in violation of Illinois common law.

134.    WSB knew or should have known that there was a high probability that its actions through Matthew Acker and other WSB employees would cause Rodney severe emotional distress as he would face a substantial financial burden to obtain health insurance for himself and Jennifer and to obtain the medical care Jennifer needed due to her MS.

135.    As a direct result of WSB's conduct, Rodney was forced to seek other employment and terminate his 18-year career with WSB on February 16, 2021, to take another position with a lower hourly rate in order to obtain health insurance coverage for Jennifer and himself at a much higher premium and out-of-pocket cost for this coverage.

136.    As a result of WSB's prolonged and outrageous actions, Rodney has suffered and continues to suffer extreme emotional, mental, physical and financial distress.

137.    WSB's conduct through Matthew Acker and other WSB employees was so intense and offensive that no reasonable person could be expected to endure it.

138.    WSB is vicariously liable for Matthew Acker's conduct.

139.    Matthew Acker's and other WSB employee's misconduct with respect to Rodney was committed within the scope of their employment and, in whole or in part, to further WSB's business interests.

140.    In violation of its written policies, WSB retained and continued to employ Matthew Acker and other WSB employees after it knew or should have known of their misconduct.

141.    As a direct and proximate result of WSB's unlawful conduct, Rodney suffered and continues to suffer extreme emotional, mental, physical and financial distress in excess of $50,000.

WHEREFORE, Plaintiff, RODNEY BENTSON, respectfully requests this Court enter judgment in his favor and against Defendant, WEST SUBURBAN BANCORP, INC., d/b/a WEST SUBURBAN BANK, in an amount that will fully compensate him for his injuries and damages from Defendant's willful and intentional infliction of emotional distress in violation of Illinois common law and award Plaintiff damages for loss of wages, past and future, loss of future earnings, loss of career opportunities, loss of employee benefits, loss of retirement benefits, exemplary/punitive damages, compensatory damages for severe emotional distress, pain and

suffering, embarrassment, humiliation, damage to reputation, medical costs, the expense of litigation, expert witness fees, reasonable attorneys' fees, cost, liquidated damages and prejudgment interest, as well as any other further relief as this Court deems just and equitable.

### JURY DEMAND

Plaintiffs Jennifer and Rodney Bentson request a jury trial for all claims that may be tried by a jury.

Respectfully submitted,

Scott Drumheller, Esq.
Attorney for Plaintiffs

Scott Drumheller, Esq. #6244465
Griffin Williams McMahon & Walsh LLP
21 N. Fourth Street
Geneva, Illinois 60134
(630) 402-0509 direct
(630) 262-0644 facsimile
sdrumheller@gwmwlaw.com
DuPage Co. No. 27822

## **VERIFICATION BY CERTIFICATION**

I, Jennifer Bentson, have read the foregoing Plaintiffs' Verified Complaint and I know the contents thereof. Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

_Jennifer Bentson_

Jennifer Bentson

Date: _____09/20/2021_____

## <u>VERIFICATION BY CERTIFICATION</u>

I, Rodney Bentson, have read the foregoing Plaintiffs' Verified Complaint and I know the contents thereof. Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Rodney Bentson

_____

Rodney Bentson

Date: ____09/20/2021_____

**EXHIBIT A**

| | | |
|---|---|---|
| **STATE OF ILLINOIS** | ) | |
| | ) **ss** | |
| **COUNTY OF COOK** | ) | **CHARGE NO. 2022CF0006** |

## AFFIDAVIT OF SERVICE

Margaret Lindenberg, deposes and states that s/he served a copy of the attached

**NOTICE OF OPT OUT OF THE INVESTIGATIVE AND ADMINISTRATIVE**

**PROCESS, RIGHT TO COMMENCE AN ACTION IN CIRCUIT COURT OR**

**OTHER APPROPRIATE COURT OF COMPETENT JURISDICTION, AND**

**ORDER OF ADMINISTRATIVE CLOSURE** on each person named below by

depositing the same on     August 19, 2021     , in the U.S. Mail Box at 555 West

Monroe Street, Chicago, Illinois, properly posted for FIRST CLASS

MAIL, addresses as follows:

For Complainant

Scott Drumheller
Griffin, Williams,
McMahon & Walsh LLP
21 N. Fourth Street
Geneva, IL 60134

For Respondent

Chief Executive Officer
West Suburban Bancorp, Inc.
711 S. Westmore-Meyers Road
Lombard, IL 60148

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

_____
Margaret Lindenberg

## PLEASE NOTE:

The above-signed person is responsible only for <u>mailing</u> these documents. Illinois Department of Human Rights' staff are not permitted to discuss the investigation findings once a Notice of Dismissal or Order of Closure has been issued.

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

**IN THE MATTER OF:**

JENNIFER BENTSON,                                )
                                                 )
                                                 )
                        COMPLAINANT,             )        CHARGE NO.        2022CF0006
AND                                              )        EEOC NO.          21BA11033
                                                 )
WEST SUBURBAN BANCORP, INC. D/B/A                )
WEST SUBURBAN BANK,                              )
                                                 )
                                                 )
                                                 )
                        RESPONDENT.              )

<u>NOTICE OF OPT OUT OF THE INVESTIGATIVE AND ADMINISTRATIVE PROCESS,</u>
<u>RIGHT TO COMMENCE AN ACTION IN CIRCUIT COURT OR OTHER APPROPRIATE</u>
<u>COURT OF COMPETENT JURISDICTION, AND ORDER OF ADMINISTRATIVE CLOSURE</u>

<u>For Complainant</u>                          <u>For Respondent</u>

Scott Drumheller                                Chief Executive Officer
Griffin, Williams,                              West Suburban Bancorp, Inc.
McMahon & Walsh LLP                             711 S. Westmore-Meyers Road
21 N. Fourth Street                             Lombard, IL  60148
Geneva, IL  60134


**Date Perfected Charge Filed:** Jul 9, 2021          **Date Opt Out Request Filed:** Aug 8, 2021

YOU ARE HEREBY NOTIFIED that pursuant to Section 7A-102(C-1) of the Illinois Human Rights Act (775 ILCS 5/7A-102(C-1)), Complainant having filed a written request to opt out of the Illinois Department of Human Rights' investigation and administrative processing of the above-captioned charge, the IDHR issues this Notice of Opt Out of the Investigative and Administrative Process, and the Right of Complainant to Commence an Action in the Circuit Court or other appropriate court of competent jurisdiction within 95 days from the date of this Notice and Order, as identified above.

- Complaint filed and serve a copy of the complaint to the Department and Respondent on the same date that the complaint is filed with the circuit court or other appropriate court of competent jurisdiction.
- Complainant may not file or refile a substantially similar charge with the Department arising from the same incident of unlawful discrimination or harassment.

NOW, THEREFORE, it is further hereby ORDERED that the Department cease the investigation and administratively close the charge of civil rights violation(s).

ENTERED ON  August 19, 2021

                                        DEPARTMENT OF HUMAN RIGHTS

                                        BY: _____
                                             Brent A. Harzman, Director
                                             Charge Processing Division

| | | |
|---|---|---|
| **STATE OF ILLINOIS** | ) | |
| | ) **ss** | |
| **COUNTY OF COOK** | ) | **CHARGE NO. 2022CF0007** |

### AFFIDAVIT OF SERVICE

Margaret Lindenberg, deposes and states that s/he served a copy of the attached

**NOTICE OF OPT OUT OF THE INVESTIGATIVE AND ADMINISTRATIVE**

**PROCESS, RIGHT TO COMMENCE AN ACTION IN CIRCUIT COURT OR**

**OTHER APPROPRIATE COURT OF COMPETENT JURISDICTION, AND**

**ORDER OF ADMINISTRATIVE CLOSURE** on each person named below by

depositing the same on      August 19, 2021     , in the U.S. Mail Box at 555   West

Monroe    Street, Chicago,      Illinois,      properly      posted      for   FIRST   CLASS

MAIL,  addresses  as follows:

For Complainant

Scott Drumheller
Griffin, Williams,
McMahon & Walsh LLP
21 N. Fourth Street
Geneva, IL  60134

For Respondent

Chief Executive Officer
West Suburban Bancorp, Inc.
711 S. Westmore-Meyers Road
Lombard, IL  60148

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

_____
Margaret Lindenberg

**PLEASE NOTE:**

The above-signed person is responsible only for <u>mailing</u> these documents. Illinois Department of Human Rights' staff are not permitted to discuss the investigation findings once a Notice of Dismissal or Order of Closure has been issued.

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS

**IN THE MATTER OF:**

RODNEY BENTSON,                              )
                                            )
                                            )
                 COMPLAINANT,   )   CHARGE NO.    2022CF0007
AND                                         )   EEOC NO.      21BA11034
                                            )
WEST SUBURBAN BANCORP, INC. D/B/A )
WEST SUBURBAN BANK,                 )
                                            )
                                            )
                                            )
                 RESPONDENT.     )

## NOTICE OF OPT OUT OF THE INVESTIGATIVE AND ADMINISTRATIVE PROCESS, RIGHT TO COMMENCE AN ACTION IN CIRCUIT COURT OR OTHER APPROPRIATE COURT OF COMPETENT JURISDICTION, AND ORDER OF ADMINISTRATIVE CLOSURE

<u>For Complainant</u>

Scott Drumheller
Griffin, Williams,
McMahon & Walsh LLP
21 N. Fourth Street
Geneva, IL 60134

<u>For Respondent</u>

Chief Executive Officer
West Suburban Bancorp, Inc.
711 S. Westmore-Meyers Road
Lombard, IL 60148

**Date Perfected Charge Filed:** Jul 9, 2021        **Date Opt Out Request Filed:** Aug 8, 2021

YOU ARE HEREBY NOTIFIED that pursuant to Section 7A-102(C-1) of the Illinois Human Rights Act (775 ILCS 5/7A-102(C-1)), Complainant having filed a written request to opt out of the Illinois Department of Human Rights' investigation and administrative processing of the above-captioned charge, the IDHR issues this Notice of Opt Out of the Investigative and Administrative Process, and the Right of Complainant to Commence an Action in the Circuit Court or other appropriate court of competent jurisdiction within 95 days from the date of this Notice and Order, as identified above.

- Complaint filed and serve a copy of the complaint to the Department and Respondent on the same date that the complaint is filed with the circuit court or other appropriate court of competent jurisdiction.
- Complainant may not file or refile a substantially similar charge with the Department arising from the same incident of unlawful discrimination or harassment.

NOW, THEREFORE, it is further hereby ORDERED that the Department cease the investigation and administratively close the charge of civil rights violation(s).

ENTERED ON August 19, 2021

DEPARTMENT OF HUMAN RIGHTS

BY: _Brent A. Harzman_____

Brent A. Harzman, Director
Charge Processing Division