IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER BENTSON and RODNEY BENTSON,<br><br>    Plaintiffs,<br><br>v.<br><br>WEST SUBURBAN BANCORP, INC., d/b/a WEST SUBURBAN BANK<br><br>    Defendant. | Case No. 21-cv-5390<br>Hon. Judge Blakey |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 12(c)**
**PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS**

NOW COME Plaintiffs, JENNIFER BENTSON AND RODNEY BENTSON, by and through their attorneys, Griffin Williams McMahon & Walsh LLP, and for their Response to the Rule 12(c) Partial Motion for Judgment on the Pleadings filed by Defendant WEST SUBURBAN BANCORP, INC., d/b/a WEST SUBURBAN BANK ("WSB"), Plaintiffs state as follows:

**INTRODUCTION**

Plaintiff Jennifer Bentson ("Jennifer") was an employee of WSB for over 15 years and Plaintiff Rodney Bentson ("Rodney") was an employee of WSB for over 18 years. Verified Complaint, ECF No. 1-1, ¶¶ 5-6. Jennifer and Rodney were married in 1994. *Id.* at ¶ 7. In 2018, Jennifer experienced sudden and severe loss of the use of her left arm and left leg and was diagnosed with Multiple Sclerosis ("MS"). *Id.* at ¶ 19. Due to her ongoing challenges with this debilitating medical condition, Jennifer relies primarily on a wheelchair for mobility. *Id.* at ¶ 20.

Plaintiffs filed this action against WSB for discrimination against Jennifer in violation of the Illinois Human Rights Act ("IHRA")(Count I); discrimination against Jennifer in violation of

1

the American with Disabilities Act ("ADA")(Count II); outrageous, deliberate and tortious conduct against Jennifer constituting Intentional Infliction of Emotional Distress ("IIED") in violation of Illinois common law (Count III); discrimination against Rodney in violation of the ADA (Count IV); and outrageous, deliberate and tortious conduct against Rodney constituting IIED in violation of Illinois common law (Count V). Verified Complaint, ECF No. 1-1.

Defendant filed its Verified Answer and Affirmative Defenses to Plaintiff's Verified Complaint on November 12, 2021 (ECF No. 8), its First Amended Affirmative Defenses on December 20, 2021 (ECF No. 19), its Rule 12(c) Partial Motion for Judgment on the Pleadings on December 20, 2021 ("Rule 12(c) Motion")(ECF No. 20), and its Memorandum of Law in Support of its Rule 12(c) Partial Motion for Judgment on the Pleadings on December 20, 2021 (ECF No. 21).

In accordance with this Honorable Court's Minute entry on December 23, 2021 (ECF No. 23), Plaintiffs present this Response to Defendant's Rule 12(c) Partial Motion for Judgment on the Pleadings.

## SUMMARY OF ARGUMENT

In its Rule 12(c) Motion, Defendant moves for judgment on the pleadings with respect to Counts III and V alleging IIED, Count IV alleging ADA discrimination to the extent it is based on constructive discharge, and punitive damages as requested in the Prayers for Relief for Counts I, III and V.

As further detailed below, Plaintiffs' IIED claims are not preempted by the IHRA because the outrageous, deliberate and tortious conduct alleged in the Statement of Facts and in Counts III and V are not solely based on unlawful discrimination and the allegations are sufficiently pled to state standalone, independent IIED claims. Additionally, Rodney's ADA

2

discrimination claim sufficiently states a claim and it also alleges sufficient facts for Rodney's constructive discharge claim. Finally, Plaintiffs assert that punitive damages may be awarded for willful and wanton conduct even if it not expressly authorized under the IHRA and Defendant's cited authorities are not controlling on this issue with respect to Count I; however, Plaintiffs withdraw their request for punitive damages in the Prayers for Relief of their IIED claims in Counts III and V.

## LEGAL STANDARD

"A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is evaluated using the same standard applicable to Rule 12(b)(6) motions to dismiss for failure to state a claim." *Gully v. Arrow Financial Services, LLC,* No. 04-CV-6849, 2005 WL 5915789, at *2 (N.D. Ill. June 8, 2005) (citing *Guise v. BWM Mortgage, LLC,* 377 F.3d 795, 798 (7th Cir. 2004)). Under this standard, judgment on the pleadings should be granted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Id.* (quoting *Thomas v. Guardsmark, Inc.,* 381 F.3d 701, 704 (7th Cir. 2004) and *Midwest Gas Servs., Inc. v. Indiana Gas Co.,* 317 F.3d 703, 709 (7th Cir. 2003)).

In evaluating a Rule 12(c) motion, a court must accept all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *Id.* Such a motion should be granted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Thomas*, 381 F.3d at 704 (quoting *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) ("A complaint may not be dismissed unless it is impossible to prevail under any set of facts that could be proved consistent with the allegations.")); *Brunt v. Serv. Employees Int'l Union,* 284 F.3d 715, 718–19 (7th Cir. 2002)("A court will grant a Rule 12(c) motion only when it appears beyond a doubt that the plaintiff cannot prove any facts to

support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved."); *Gully* at *8 (denying Rule 12(c) motion for judgment on the pleadings and stating "[v]iewing the allegations in a light most favorable to Plaintiffs, the court cannot say that they will be unable to prove any set of facts supporting their claim for relief. . . .").

## ARGUMENT

I. **Plaintiffs' IIED Claims in Counts III and V Are Not Preempted by the IHRA and Plaintiffs' Statement of Facts and Counts III and V Plead Outrageous, Deliberate and Tortious Conduct Sufficient to State Standalone, Independent IIED Claims**

When a plaintiff can allege facts sufficient to establish the elements of an intentional infliction of emotional distress independent of the legal duties under the IHRA, the IIED claim is not preempted by the IHRA. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006); *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 687 N.E.2d 21, 22 (1997). The concrete question to ask is whether the plaintiff states a valid common law claim without relying on rights and duties created by the IHRA. *Naeem*, 444 F.3d at 602-03  *Maksimovic*, 687 N.E.2d at 24.

A. **Elements of an IIED Claim**

To establish an IIED claim under Illinois law, Plaintiff must introduce sufficient evidence that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress; and (3) the defendant's conduct did cause severe emotional distress. *Naeem*, 444 F.3d at 605.

1. **Extreme and Outrageous Conduct**

Extreme and outrageous conduct exists only where the conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Wordlow v. Chicago*

4

*Board of Education,* No. 16-CV-8040, 2018 WL 6171792, at *13 (N.D. Ill. Nov. 26, 2018)(quoting *Bergstrom v. McSweeney,* 294 F. Supp. 2d 961, 969 (N.D. Ill. 2003)). Generally, the case is one in which "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim[:] Outrageous!" *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008) (citing *Honaker v. Smith,* 256 F.3d 477, 490 (7th Cir. 2001)).

In determining whether conduct is extreme and outrageous, courts use an objective standard based upon all the facts and circumstances of a particular case. *Cobige v. City of Chicago,* No. 06-CV-3807, 2009 WL 2413798, at *13 (N.D. Ill. Aug. 6, 2009). Conduct "does not exist in a vacuum and must be viewed in its pertinent context." *Carr v. Vill. of Richmond,* No. 96-CV-50203, 1996 WL 663921, at *8 (N.D. Ill. Nov. 15, 1996). Another consideration is whether the plaintiff is "particularly susceptible to emotional distress because of some physical or mental condition or peculiarity." *Wordlow,* 2018 WL 6171792, at *13 (quoting *Honaker,* 256 F.3d at 491).

### 2. Intent to Inflict Severe Emotional Distress

The intent to inflict severe emotional distress can be established with proof of either intentional or reckless conduct. *Id.* (quoting *Fielding v. Lavender*, No. 02-CV-0991, 2003 WL 742190, at *4 (N.D. Ill. Mar 3, 2003). The tort applies "where the actor desires to inflict severe emotional distress," where "he knows that such distress is certain, or substantially certain, to result from his conduct," or where he acts recklessly "in deliberate disregard of a high degree of probability that the emotional distress will follow." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. i (1965)); see also *Honaker*, 256 F.3d at 494.

5

### 3. Severe Emotional Distress

The elements of an IIED claim are linked. *Id.* at *14. "[T]he extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." *Id.* (citing *Honaker*, 256 F.3d at 496, and quoting *Wall v. Pecaro*, 561 N.E.2d 1084, 1088 (Ill. App. Ct. 1990)). "These cases acknowledge that, 'even when significant evidence [is] not presented as to the severity of distress, the very nature of the conduct involved may be evidence of its impact on the victim.'" *Id.* Illinois courts tend "to merge the issue of the outrageousness of the defendant's conduct with the issue of the severity of the plaintiff's emotional distress, in effect requiring more evidence of outrageousness the weaker the evidence of distress." *Id.* (quoting *Bristow v. Drake St. Inc.*, 41 F.3d 345, 350 (7th Cir. 1994)). Further, Illinois courts "have been more inclined to characterize the emotional distress as severe" when the distress has manifested itself "either through physical symptoms or has necessitated medical treatment." *Id.*

### B. Plaintiffs' Detailed Allegations Stand Alone as Independent IIED Claims and Are Not Preempted by IHRA

The Statement of Facts and Counts III and V of Plaintiffs' Verified Complaint state valid common law IIED claims without relying on the rights and duties created by the IHRA. See *Naeem*, 444 F.3d at 602-03; *Maksimovic*, 687 N.E.2d at 24. Contrary to Defendant's arguments, Plaintiffs' Verified Complaint includes at least <u>59</u> separate paragraphs describing in detail a "pattern of egregious conduct" by WSB through Matthew Acker[1], and other WSB employees expected to be determined during discovery, intending to deprive and actually depriving Plaintiffs from employment, compensation and health insurance benefits. Verified Complaint ¶¶

---

[1] Matthew Acker is WSB's Senior Vice President, Director of Retail Branch Banking. Matthew Acker is a Senior Officer and member of WSB's executive management, with authority to make management decisions that impact WSB's business, retail bank branches and employees, including hiring, firing, and other employment-related decisions. Matthew Acker is the son of WSB Chairman of the Board and CEO Keith Acker. (Verified Complaint ¶31, ECF No. 1-1; Verified Answer and Affirmative Defenses to Plaintiff's Verified Complaint ¶31, ECF No. 8.)

22-52, 56-58, 98-109, 129-141, ECF No. 1-1. Specifically, these factual allegations describe in detail the health insurance expenses incurred by WSB and its insurance carrier on behalf of Plaintiffs related to Jennifer's diagnosis and ongoing treatment for MS; the timing and WSB's alleged reasons given for the decisions to reduce Rodney's hours, reduce Rodney's compensation and eliminate Rodney's eligibility for health insurance benefits and, within a week thereafter, to close Jennifer's branch and eliminate Jennifer's position; WSB's failure to inform or consider Jennifer for a known available position for which Jennifer was exceptionally qualified prior to terminating Jennifer's employment; the damage to Jennifer and Rodney's careers after 15 and 18 years of employment, respectively, resulting from diminished future job opportunities; the substantial financial burden to obtain health insurance and the medical care Jennifer needed; and the extreme emotional, mental, physical and financial distress that both Jennifer and Rodney have suffered because of WSB's actions. *Id.*

Although some of the above-referenced factual allegations may overlap as facts that support Plaintiffs' disability discrimination claims, even disregarding the discrimination claims and whether or not Jennifer was not disabled under the IHRA and ADA, the factual allegations of Defendant's actions standing alone support separate and distinct, independent IIED claims by Jennifer and Rodney. *Naeem,* 444 F.3d at 603, n.4 ("[P]reemption should rest on an examination of legal duties, not on the factual overlap between the claims.") The factual overlap between a statutory and an emotional distress claim does not matter and Plaintiffs may pursue tort claims free of statutory preemption – as long as Plaintiffs do not rely on legal rights or duties created by the IHRA. *Id.* at 604; *Richards v. U.S. Steel*, 869 F.3d 557, 564-65 (7th Cir. 2017).

In this case, WSB took several separate, but strategically coordinated actions under the guise of alleged "business decisions" that, when considered all together, effectively eliminated

7

the ability for both Jennifer and Rodney to utilize critical and necessary health insurance benefits and obtain the necessary medical care for Jennifer. Verified Complaint ¶¶ 22-52, 56-58, 98-109, 129-141, ECF No. 1-1. It is expected that discovery will show these health insurance benefits provided the ongoing, medically necessary treatments to address the current symptoms and effects of MS that Jennifer experiences and, even more importantly, these treatments prevent a deterioration or worsening of the debilitating symptoms and effects of this disease. Plaintiffs further allege that this course of conduct by WSB through Matthew Acker and other employees was done intentionally, with full knowledge of Jennifer's MS, and that WSB knew or should have known the significant harm that a lack of medical treatment could cause Jennifer and, therefore, the resulting severe emotional distress that such actions would cause Plaintiffs. *Id.* It is also expected that discovery will show that WSB made these decisions with respect to Plaintiffs, at least in part, to reduce expenses in order to become a more attractive merger partner, ultimately consummated with Old Second Bank, which resulted in significant financial compensation for Matthew Acker, Keith Acker and other Senior Officers at WSB. *Id.*; Verified Answer and Affirmative Defenses to Plaintiff's Verified Complaint ¶31, ECF No. 8.; see also Part I.B., page 7, n.1 *supra*. Clearly, this case is one in which "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim[:] **Outrageous!**" *Lewis,* 523 F.3d at 747 (citing *Honaker*, 256 F.3d at 490).

Based on the facts detailed above and as alleged in Plaintiffs' Verified Complaint, WSB through Matthew Acker and other employees engaged in a pattern of egregious conduct that is extreme and outrageous, goes beyond all possible bounds of decency, must be regarded as atrocious, must be considered utterly intolerable in a civilized community, and "clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements

8

or job-related stress caused by the average work environment." *Wordlow*, 2018 WL 6171792, at *13; *Honaker*, 256 F.3d at 490-91; see Verified Complaint ¶¶ 22-52, 56-58, 98-109, 129-141, ECF No. 1-1. Under Illinois common law, an "employer may be held vicariously liable for the tort of an employee if the tort is committed within the scope of the employment." *Richards*, 869 F.3d at 565-66. WSB has a legal duty to protect its employees from such egregious misconduct by its Senior Officers. *Naeem*, 444 F.3d at 605-06 (concluding, after describing a pattern of egregious misconduct by defendant's employees against plaintiff, that "[v]iewing this evidence in the light most favorable to [plaintiff], the jury could have found that the [defendant's] employees intended to cause emotional distress."); *Weis v. Timberline Knolls, LLC*, No. 10-CV-5935, 2011 WL 687137, at *5 (N.D. Ill. Feb. 17, 2011)(holding IIED claim was not preempted by the IHRA when plaintiff based her IIED claim on "the timing of her termination, the way in which it was carried out, and subsequent conduct by defendants.") Under the facts and circumstances in this case and, when considered in context with Jennifer's debilitating MS, the timing and pattern of WSB's misconduct, WSB's anticipated merger and subsequent substantial financial compensation for its Senior Officer as well as other facts expected to be revealed in discovery, WSB breached its duties with respect to two of its long-term, loyal employees, Jennifer and Rodney, without regard to any rights or duties under the IHRA. *Id.*

      C.     **Plaintiffs' Detailed IIED Allegations are Sufficient to State a Claim**

As further detailed in Part I.B. above, the factual allegations in the Verified Complaint considered in their totality sufficiently allege that: (1) WSB's conduct was extreme and outrageous; (2) WSB intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress; and (3) WSB's conduct did cause severe emotional distress for Plaintiffs. Verified Complaint ¶¶ 22-52, 56-58,

9

98-109, 129-141, ECF No. 1-1; *Naeem*, 444 F.3d at 605; *Cobige*, 2009 WL 2413798, at *13 (finding that courts use an objective standard based upon all the facts and circumstances of a particular case to determine whether conduct is extreme and outrageous); *Carr*, 1996 WL 663921, at *8 (stating that conduct "does not exist in a vacuum and must be viewed in its pertinent context.").

Additionally, given that the Parties only issued their written discovery requests at the beginning of this month (January 2022) and no discovery responses or documents have been produced by either party, there are many material issues of fact that remain to be explored and further discovered with respect to this case, including the knowledge and intent of Matthew Acker and other WSB employees at the time of taking these actions, and the severity of the emotional distress suffered by Jennifer and Rodney – both of which are expected to further support Plaintiffs' IIED claims. See *Brunt,* 284 F.3d at 718–19 (holding that a court will grant a Rule 12(c) motion only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved); *Bristow,* 41 F.3d at 350 (stating that Illinois courts "have been more inclined to characterize the emotional distress as severe" when the distress has manifested itself either through physical symptoms or has necessitated medical treatment."). A request for dismissal on the pleadings with these facts and circumstances is premature and unwarranted.

In summary, Defendant's Rule 12(c) Motion with respect to Plaintiffs' IIED claims in Counts III and V should be denied. In the alternative and in the event any elements of Plaintiffs' IIED claims are insufficiently pled, Plaintiffs respectfully request this Honorable Court for leave to amend their complaint pursuant to Fed. R. Civ. P. 15(a)(2) accordingly.

10

**II.     Plaintiff Rodney Bentson States a Claim for ADA Discrimination in Count IV, Including Sufficient Facts to Substantiate a Constructive Discharge Claim**

Count IV of the Verified Complaint alleges a claim for Discrimination by Association in Violation of the Americans with Disabilities Act on behalf of Plaintiff Rodney Bentson and specifically alleges a violation of 42 U.S.C. § 12111(b)(4), which is not challenged in Defendant's Rule 12(c) Motion. Verified Complaint ¶¶ 110-128, ECF No. 1-1. In Paragraph 110 of the Verified Complaint, Rodney realleges and incorporates by reference Paragraphs 1 through 58 as if fully set forth in Paragraph 110. (See summary of these allegations in Part I.B. *supra*.) Additionally, in Paragraphs 120 through 123, Rodney alleges that WSB reduced his position from full-time to 20 hours per week; that WSB decreased his annual salary more than $27,000; that the reduction in hours resulted in Rodney losing eligibility for health, life and accidental death insurance and other employee benefits; that WSB took these actions due to Jennifer's disability and based on the expense of providing health insurance to Rodney and Jennifer; and that, as a direct result of WSB's conduct, Rodney was forced to seek other employment and terminate his 18-year career with WSB to take another position with a lower hourly rate in order to obtain health insurance coverage for Jennifer and himself as a much higher premium and out-of-pocket cost for this coverage. Verified Complaint ¶¶ 120-123, ECF No. 1-1. Additionally, in Paragraph 127 of Count IV, Rodney alleges:

> WSB discriminated against and constructive discharged him based on the association with Jennifer and due to Jennifer's disability and/or perceived disability and the expense of providing health insurance to Rodney and Jennifer due to Jennifer's disability.

Verified Complaint ¶127, ECF No. 1-1.

To plead constructive discharge, "a plaintiff needs to show that his working conditions were so intolerable that a reasonable person would have been compelled to resign." *Herrera v. Di Meo Brothers, Inc.,* 529 F.Supp.3d 819, 829 (N.D. Ill. 2021)(quoting *Gilhooly v. UBS Sec.,*

*LLC,* 772 F. Supp. 2d 914, 917 (N.D. Ill. 2011) and *Rabinovitz v. Pena,* 89 F.3d 482, 489 (7th Cir. 1996)). In *Herrera*, the plaintiff identified "specific examples of poor treatment" and "alleged an unlawful motive for that treatment, and at this stage, that is enough." *Herrera,* 529 F.Supp3d. at 829 (citing *Carlson v. CSX Transp., Inc.,* 758 F.3d 819, 830 (7th Cir. 2014) and denying motion to dismiss constructive discharge claims).

Defendant's cases on constructive discharge are factually and procedurally distinguishable from this case. *EEOC v. Costco Wholesale Group*, 903 F.3d 618, 629 (7th Cir. 2018)(remanding to district court on cross-appeal following jury trial to decide whether sexual harassment employee suffered forced her to take unpaid medical leave and whether employee is entitled to recover backpay for some period of time following the involuntary leave and before her employment was terminated for failure to comply with employer's requirement to return to work); *Taylor v. Abt Electronics, Inc.*, No. 05-CV-576, 2010 WL 234997, * 4 (N.D. Ill. Jan. 15, 2010)(granting summary judgment on constructive discharge claim following discovery in which plaintiff admitted she never felt discriminated against and she was demoted and her pay was reduced $2.00 per hour for referring a customer to a competing electronics store); *McPherson v. City of Waukegan,* 379 F.3d 430, 440 (7th Cir. 2004)(affirming summary judgment on constructive discharge claim following discovery where plaintiff resigned months after hostile working conditions were long gone and after employer sent letters encouraging plaintiff to return to work, offering her additional discretionary leave and informing her that the alleged harasser had resigned so she need not fear returning to a harassing work environment). In this case, Rodney identified "specific examples of poor treatment," "alleged an unlawful motive for that treatment," and at the pleadings stage prior to any discovery, "that is enough." *Herrera,* 529 F.Supp3d. at 829 (denying motion to dismiss constructive discharge claims).

As a result, Defendant's Rule 12(c) Motion with respect to Plaintiff Rodney Bentson's constructive discharge claim as part of Count IV should be denied. In the alternative and in the event any elements of Rodney's constructive discharge claim are insufficiently pled, Plaintiffs respectfully request this Honorable Court for leave to amend their complaint pursuant to Fed. R. Civ. P. 15(a)(2) accordingly.

### III. Punitive Damages May Be Awarded For Willful and Wanton Conduct Even If Not Expressly Authorized Under the IHRA and Should Not be Struck from Plaintiff's Prayer for Relief in Count I

The Illinois Supreme Court has not determined whether exemplary/punitive damages are available for IHRA claims and the Federal District Courts in Illinois appear to be split on the issue. In *Flowers v. Steckenrider*, the court found that, although the IHRA does not expressly authorize punitive damages, "this does not mean that punitive damages are not available." *Flowers v. Steckenrider*, No. 14-CV-0877, 2015 WL 13833522, * 2 (S.D. Ill. Dec. 17, 2015)(citing 775 ILCS 5/8A-104). The court also cited *Vincent v. Alden-Park Strathmoor, Inc.*, in which the Illinois Supreme Court held that a court may award common law punitive damages even where the Nursing Home Care Act does not expressly authorize such relief. *Flowers,* 2015 WL 13833522, * 2 (citing *Vincent v. Alden-Park Strathmoor, Inc.*, 241 Ill.2d 495, 948 N.E.2d 610, 614 (2011)). The court noted that the Illinois Supreme Court explained in *Vincent* that common law punitive damages may be recovered where a plaintiff establishes willful and wanton misconduct. *Id.* Further, the court found that, although punitive damages are not expressly provided for in the Act, they are also not barred by the Act. *Id.* As a result, the court held that punitive damages could be available if the plaintiff is able to demonstrate a willful and wanton violation of the IHRA. *Flowers*, 2015 WL 13833522, * 2 (denying defendant's motion to strike plaintiff's request for punitive or exemplary damages in her complaint).

13

Defendant cites two Northern District of Illinois cases and two Illinois cases for the proposition that punitive damages are not allowed in IHRA cases. See *Sabet v. City of North Chicago*, No. 16-CV-10783, 2020 WL 832360, * 19 (N.D. Ill. Feb. 20, 2020); *Stratton v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 11-CV-8011, 2012 WL 1533456, * 2 (N.D. Ill. April 25, 2012); *Baker v. Miller*, 159 Ill.2d 249, 636 N.E.2d 551, 557 (1994); *Page v. City of Chicago*, 299 Ill.App.3d 450, 701 N.E.2d 218, 227-28 (Ill. App. Ct. 1998). A closer examination of each of these cases is warranted.

In *Sabet* and *Stratton*, the courts concluded that Illinois courts do not allow punitive damages in IHRA cases and cited *Baker* and *Page*. *Id.* However, in *Baker*, the Illinois Supreme Court stated that "the remedies provided under the IHRA are extensive, including actual damages, back pay, the provision of fringe benefits which may have been denied and 'make whole relief'" and then simply noted, in dicta: "Noticeably absent is any provision for punitive damages." *Baker*, 636 N.E.2d at 557 (affirming dismissal of employment discrimination claims, in part, because at that time the IHRA excluded employees of small employers from coverage and not addressing any damage claim at all).

In *Page*, the court actually distinguished *Baker*, acknowledging that *Baker* noted, in dicta, that the IHRA does not specifically provide a punitive damages remedy, and affirmed the City of Chicago Human Relations Commission's award of punitive damages even though the Chicago Human Rights Ordinance also does not specifically provide for or exclude punitive damages, but rather calls for such "relief as may be appropriate." *Page*, 701 N.E.2d at 227-28.

None of Defendant's cited authorities are controlling on this issue. The reasoning of *Flowers* and its reliance on an analogous statutory interpretation by the Illinois Supreme Court in a more recent case is far more persuasive and should be followed by this Court. See *Flowers*,

14

2015 WL 13833522, * 2. As a result, Defendant's Rule 12(c) Motion with respect to exemplary/punitive damages sought in the prayer for relief in Count I should be denied.

IV. **Plaintiffs Withdraw Their Request for Punitive Damages in the Prayers for Relief of the IIED claims in Counts III and V**

Plaintiffs withdraw their requests for exemplary/punitive damages which were inadvertently included in the prayers for relief of the IIED claims in Counts III and V.

### CONCLUSION

For the foregoing reasons, Plaintiffs JENNIFER and RODNEY BENTSON respectfully request this Honorable Court deny Defendant's Rule 12(c) Motion with respect to Counts III and V, Count IV with respect to Plaintiff Rodney Bentson's constructive discharge claim, and Plaintiff Jennifer Bentson's request for punitive damages in the Prayer for Relief for Count I, and grant any further relief as this Court deems just and equitable.

Respectfully submitted,

JENNIFER BENTSON &
RODNEY BENSTON

By: */s/ Scott Drumheller*
     One of their attorneys

Patrick J. Walsh/6287629
Scott Drumheller/6244465
Griffin Williams McMahon & Walsh LLP
21 N. Fourth Street
Geneva, IL 60134
P. (630) 402-0509
F. (630) 262-0644
pwalsh@gwmwlaw.com
sdrumheller@gwmwlaw.com

## CERTIFICATE OF SERVICE

  I hereby certify that on January 17, 2021, I electronically filed the foregoing Plaintiffs' Motion to Strike Affirmative Defenses with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

        Jeffrey A. Risch, Esq.
        Steven W. Jados, Esq.
        SMITHAMUNDSEN LLC
        3815 E. Main Street, Suite A-1
        St. Charles, IL 60174
        jrisch@salawus.com
        sjados@salawus.com
        **ATTORNEYS FOR DEFENDANT**


        **JENNIFER BENTSON and**
        **RODNEY BENTSON**


        By: /s/ Scott Drumheller
          One of Plaintiffs' Attorneys

Patrick J. Walsh/6287629
Scott Drumheller/6244465
Griffin Williams McMahon & Walsh LLP
21 N. Fourth Street
Geneva, IL 60134
P. (630) 402-0509
F. (630) 262-0644
pwalsh@gwmwlaw.com
sdrumheller@gwmwlaw.com
**ATTORNEYS FOR PLAINTIFFS**